UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAYLEA L.-S.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

23-CV-6554S

        1.      Plaintiff Kaylea L.-S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.      Plaintiff protectively filed her application with the Social Security Administration on October 11, 2016.  She alleged disability beginning on January 1, 2015, due to obesity, seizure disorder, cervicalgia, asthma, attention deficit disorder/attention deficit hyperactivity disorder (or "ADD/ADHD"), impulse control disorder, borderline personality disorder, schizophrenia spectrum disorder, right ankle cyst, lower back and shoulder pain, headaches, abdominal pain, left fifth toe fracture, and interstitial cystitis (or "IC").  Her application was denied and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3.      On September 18, 2019, ALJ Michael Stacchini held a video hearing at which Plaintiff and a Vocational Expert appeared and testified.  (R.[2] at 16, 32-72.)  At the time of the hearing, Plaintiff was a 25-year-old woman with a limited education and no past relevant work.  (R. at 24, 771.)

4.      The ALJ considered the case *de novo* and, on October 17, 2019, issued a written decision denying Plaintiff's application for benefits.  (R. at 16.)  After the Appeals Council denied Plaintiff's request to review the ALJ's decision (R. at 1), she filed her action challenging the Commissioner's decision.  This action resulted in a Decision and Order issued by Hon. Don D. Bush, United States Magistrate Judge, on March 2, 2022, that remanded the case for further proceedings.  Kaylea L. v. Comm'r, No. 6:20-cv-6731-DB. (R. at 836.)  Magistrate Judge Bush remanded because the ALJ failed to rely on Plaintiff's mental health treatment notes to assess her mental functioning, instead inappropriately resting on his own lay interpretation of the record.  (R. at 848.)  Because the ALJ failed to obtain competent medical opinions that contained functional limitations on which he could base the mental residual functional capacity ("RFC"), Magistrate Judge Bush found that the ALJ left an evidentiary gap warranting remand and ordered the ALJ to "thoroughly explain his findings regarding Plaintiff's work-related mental limitations."  (R. at 849.)

5.      On March 25, 2022, the Appeals Council vacated the ALJ's 2019 decision and directed further administrative proceedings consistent with Magistrate Judge Bush's Decision and Order.  (R. at 854.)

6.      On this remand, the ALJ conducted a teleconference hearing due to COVID-19 pandemic commenced on September 27, 2022, and continued on June 1,

---

[2] Citations to the underlying administrative record are designated as "R."

2023, where Plaintiff (represented by counsel), Vocational Expert Sheri Pruitt, and Impartial Medical Expert Ashok Khushalani, M.D., appeared and testified.  (R. at 755, 769, 782-824, 825-35.)  On June 20, 2023, the ALJ issued his decision denying Plaintiff's claim for benefits.  (R. at 755.)

7.      After this decision, Plaintiff filed this current action challenging the Commissioner's final decision.[3]  (Docket No. 1.)  Both parties moved for judgment on the pleadings.  (Docket Nos. 6, 8.)  Plaintiff filed her response to Defendant's brief and in support of her Motion on January 26, 2024.  (Docket No. 9.)  This Court then took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

8.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's June 20, 2023, decision became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

9.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).    If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

10.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

11.     The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as

4

age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

12.    At Step Two, an impairment is deemed "severe" if it significantly limits a claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(c).  An impairment or combination of impairments is found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.  See SSR 85-28, 1985 SSR LEXIS 19 (1985); 20 C.F.R. § 416.922; Donahue v. Colvin, No. 6:17-CV-06838 (MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018).  The claimant bears the burden of establishing that she has a severe impairment, "which is 'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work." Miller v. Berryhill, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017); see 20 C.F.R. § 416.920(c).  This severity requirement, however, is de minimis "and is meant only to screen out the weakest of claims."  Herman S. v. Comm'r, 577 F. Supp. 3d 190, 195 (W.D.N.Y. 2022); see also Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

13.    Although the claimant has the burden of proof at the first four steps, this burden shifts to the Commissioner at the fifth and final step.  See Yuckert, 482 U.S. at

146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

14.     The ALJ analyzed Plaintiff's claim for benefits under the five-step process set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the October 11, 2016, application date.  (R. at 758.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  obesity, seizure disorder, cervicalgia, asthma, ADD/ADHD, impulse control disorder, borderline personality disorder, and schizophrenia spectrum disorder.  (R. at 758.)

15.     Among her claimed ailments, the ALJ found that Plaintiff's interstitial cystitis was not a severe impairment because an ultrasound showed she had normal kidney function and minimal postvoid residual volume while a later CT scan generally was negative.  (R. at 760; <u>see also</u> R. at 575, 758-60, 2700.)  The ALJ also noted that Plaintiff experienced three procedures to ameliorate her pain, urgency, and pressure resulting in improvement of her symptoms.  (R. at 760; <u>see</u> R. at 2915-16, 2918-19, 2923, 2924, 2929.)  The ALJ concluded that this ailment did not significantly limit her ability to perform basic work, thus was not a severe impairment.  (R. at 760.)

16.     The ALJ found that the severity of Plaintiff's mental impairments, considered singly and in combination did not meet the Listings 12.03, 12.04, 12.06, 12.08, and 12.11.

6

The ALJ also considered whether "paragraph B" criteria were satisfied, noting that Plaintiff's understanding, remembering or applying information, as well as her concentrating, persisting, or maintaining pace was mildly limited, while her interaction with others and her ability to adopt or manage herself was moderately limited.  (R. at 763-65.) Thus, the ALJ determined that she did not have either at least two "marked" or one "extreme" limitation, the "paragraph B" criteria were not satisfied.  (R. at 765.)

17.    The ALJ noted that Plaintiff has been treated for depression, anxiety, substance use disorder, impulse control disorder, borderline personality disorder, schizophrenia spectrum disorder, and ADD/ADHD.  (R. at 768.)  During her examinations, providers described Plaintiff as attentive, cooperative, without confusion or agitation, with normal mood and affect, normal speech, behavior, and thought content, normal cognition, and memory, expressing impulsivity, intact attention and concentration, good insight and judgment and logical thought process.  (R. at 303, 307, 359, 368, 371, 445, 461, 472, 499, 558, 749, 1273-321; see R. at 768.)

18.    At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medical equal any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 760.)

19.    Next, the ALJ found that Plaintiff retained the RFC to perform light work with exceptions.  The ALJ noted that Plaintiff could occasionally climb ramps and stairs, but could not climb ladders, ropes, or scaffolds, while occasionally able to balance, stoop, kneel, crouch, or crawl.  The ALJ then found that Plaintiff should avoid unprotected heights and hazardous machinery and have no concentrated exposure to atmospheric conditions.  The ALJ observed that Plaintiff was limited to understanding, remembering,

and carrying out simple routine repetitive tasks with regular breaks at approximately two-hour intervals while having only occasional interaction with coworkers, supervisors, and the public.  (R. at 765.)

20.     At Step Four, the ALJ found that Plaintiff had no past relevant work.  (R. at 771.)  At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 771-72.)  The ALJ did so by posing hypotheticals to the Vocational Expert of a claimant sharing Plaintiff's age, education, work experience, and RFC.  The Expert opined that this hypothetical claimant could perform such jobs as a marker, routing clerk, and assembler.  (R. at 772.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (Id.)

21.     Plaintiff now argues that the RFC determination is not supported by substantial evidence because the ALJ did not give good reasons for rejecting the opinion of her treating physician, Stephanie Achilles, M.D., of Finger Lakes Community Health, who did not recommend that Plaintiff work at a high rate of speed, perform work requiring responsibility for decisions, working with people, or having public contact, or work part-time, alone, or change her occupation.  (R. at 2550.)  Plaintiff further contends that the ALJ did not apply the Burgess factors in overriding this opinion.  See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008); Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). Plaintiff faults the ALJ for improper consideration of her non-severe impairment of interstitial cystitis in forming her RFC.  For the reasons that follow, these arguments are unavailing.

22.     The Social Security Administration considers medical opinions in the record with the rest of relevant evidence.  20 C.F.R. § 416.927(b).  For pre-March 27, 2017,

applications, the Social Security Administration recognized a treating physician rule of deference "to the views of the physician who has engaged in the primary treatment of the claimant."  Burgess, 537 F.3d at 129.  The opinion of the treating source thus should be given controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).

23.     Unless controlling weight is given to that medical opinion, the agency must consider a series of factors in deciding the weight to be given to that opinion.  Id. § 416.927(c).  These factors include the examining relationship with claimant; the length, nature, and extent of the treatment relationship; relevant evidence which supports the opinion; consistency of the opinion with the record as a whole; acknowledgement of any specialization of the treating source; and other factors brought to the agency's attention. Id.; Burgess, 537 F.3d at 129; Guerra v. Saul, 778 F. App'x 75, 77 n.2 (2d Cir. 2019).  The ALJ then must "explicitly consider" the four Burgess factors with "a failure to 'explicitly consider' these factors is a procedural error warranting remand unless a 'searching review of the record assures the reviewing court that the substance of the treating physician rule is not traversed.'"  Guerra, 778 F. App'x at 77 (quoting Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019)).  Thus, this Court should remand for the ALJ to explicitly consider the Burgess factors "unless a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment."  Id. (quoting Estrella, 925 F.3d at 95-96).

24.     Furthermore, the ALJ may choose between properly submitted medical opinions.  McBrayer v Sec'y of Health and Human Servs., 712 F.2d 795, 799 (2d Cir.

1983) (citation omitted); <u>Balsamo v Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998).  The ALJ is entitled to weight all the evidence to make the RFC determination consistent with the record, <u>Matta v. Astrue</u>, 508 F. App'x 53, 56 (2d Cir. 2013), and resolve any conflicts in that record, <u>see Richardson v. Perales</u>, 402 U.S. at 399.  It therefore is for the ALJ, and not this Court, to weigh any conflicting medical opinions.  <u>Schaal v. Apfel</u>, 134 F.3d 496, 504 (2d Cir. 1998); <u>see Krull v. Colvin</u>, 669 F. App'x 31, 32 (2d Cir. 2016).

25.    While treating Plaintiff, on August 31, 2020, Dr. Achilles completed a Wayne County Department of Social Services psychiatric assessment report for her employment. Dr. Achilles diagnosed Plaintiff with dysthymia, anxiety, and PTSD, noting that she was under the doctor's care from December 24, 2019, and was last examined on August 31, 2020.  (R. at 2550.)

26.    The ALJ collectively gave little weight to this and other opinions,[4] concluding that they reached the ultimate issue of disability reserved to the Commissioner.  (R. at 770.)  The ALJ further found that these opinions were vague, conclusory, and not supported by or consistent with the evidence in the record including Plaintiff's otherwise conservative care.  The ALJ also found that these opinions were inconsistent with Plaintiff's "independent activities of living" and "largely intact mental status examinations." (<u>Id.</u>)

27.    Instead, the ALJ gave great weight to the testimony of medical expert Dr. Khushalani, a board-certified psychiatrist who reviewed Plaintiff's entire record but did not examine her.  (R. at 769-70.)  Dr. Khushalani testified that Plaintiff's stated condition

---

[4] The ALJ also cited as conclusory the notes and county assessment forms from Robert Shelly, M.D., and FNP-C Corey Meyn from Finger Lakes Community Health.  (R. at 2544, 2553-54, 2563-64, 2567, 2580, 2600.)

was not consistent with her treatment.  (R. at 793-94.)  From file review, Dr. Khushalani opined that Plaintiff had mild limitations in understanding, remembering, and applying information and maintaining concentration, persistence, and pace, and moderate limitations in interacting with others and self-management.  (R. 794, 792-801; <u>see</u> R. at 770.)

28.     The ALJ furthermore relied upon the medical evidence in the record that showed that Plaintiff was treated for depression, anxiety, and other mental conditions. (R. at 768.)  For example, the ALJ cited the examination on August 14, 2015, performed by Joan Olschewske, NP, of Rochester General Hospital, who observed that Plaintiff appeared agitated, with an angry affect, her mood was anxious while she appeared otherwise normal.   NP Olschewske prescribed therapy with a psychiatrist and psychologist.  (R. at 368; <u>see</u> R. at 768.)

29.     The ALJ also referenced the mental status examination of Plaintiff conducted on October 22, 2018, by Katelyn King, M.S.W., from Wayne Behavioral Health Network, who found that Plaintiff was hypoactive, with an anxious mood, excessive speech, impaired concentration, and limited insight and judgment.   Ms. King referred Plaintiff to weekly or biweekly individual therapy.  (R. at 461, 462; <u>see</u> R. at 768.)

30.     This Court concludes that Dr. Achilles' August 31, 2020, opinion (R. at 2550) was vague and lacked support from the medical evidence, and that the ALJ thus appropriately afforded less than controlling weight to it.  Specifically, this opinion is a single page form with minimal discussion identifying functions and activities which Plaintiff could or could not perform.  While stating that Plaintiff could not work in any capacity, Dr. Achilles merely recommended that Plaintiff change occupations but without stating

what that new employment should be or what restrictions Plaintiff would have to perform this work.  (Id.)

31.     Further, the ALJ sufficiently articulated reasons for the weight given for that opinion despite the ALJ failing to analyze this opinion under the Burgess factors.  On this Court's searching review of the record, this Court concludes that "the substance of the treating physician rule is not traversed" here.  E.g., Guerra, 778 F. App'x at 77.  Although the ALJ did not discuss Dr. Achilles' examining and treatment relationship with Plaintiff or her expertise, the evidence here shows from the Wayne County Department of Social Services Psychiatric Report that Plaintiff was treated from December 2019 with that report being based on the doctor's August 31, 2020, examination.  (Id.)  The ALJ discussed the absence of supporting evidence for this opinion and its lack of consistency with the rest of medical evidence.  This record also does not contain Dr. Achilles' treatment notes prior to her August 2020 report or the examination record leading to that opinion.  (R. at 2726-28, 2731.)

32.     Although Plaintiff presents Dr. Achilles' later treatment notes for February 8, 2021 (cf. R. at 2726-31), these cannot support her August 2020 opinion.  The August 2020 opinion also is not consistent with those subsequent treatment notes in which Dr. Achilles observed Plaintiff's normal mood and thought process.  (R. at 2726-38, 2731.)  Nor was this opinion consistent with other examination findings by Letizia Cascio, LMSW, of Rochester Regional Health, who also found Plaintiff having euthymic mood and linear or circumstantial thought process during the examination.  (R. at 1284, 1288, 2822-23, 2826, 2842, 2850.)  LMSW Cascio had conducted a series of one-on-one therapy sessions with Plaintiff from June 6, 2022, through March 10, 2023, where she noted that

12

Plaintiff made progress toward her goals and prescribed continued therapy.  (R. at 1283, 1284, 1287, 1288, 2821, 2823, 2825, 2827, 2841, 2842-43, 2849, 2851.)  Thus, there was little evidence supporting Dr. Achilles' August 2020 opinion.

33.     The ALJ did not discuss Dr. Achilles' specialization because her specialty is not relevant to assessment of her opinion.

34.     Upon the searching review of this record, this Court finds that the ALJ thus appropriately weighed this single opinion from Dr. Achilles.  Therefore, Plaintiff's Motion for Judgment on the Pleadings on the consideration of this opinion is denied.

35.     Plaintiff next argues that the ALJ inappropriately considered here Interstitial cystitis (or "IC") a chronic condition of an inflamed or irritated bladder wall, potentially leading to scarring and stiffening of the bladder, and reduced urine capacity. https://www.hopkinsmedicine.org/health/conditions-and-diseases/interstitial-cystitis#:~:text=Interstitital%20(IC)%20is%20an,Its%20is20a%20chronic%20disorder (last visited October 3, 2024); see Clayton Thomas, ed., Taber's Cyclopedic Medical Dictionary 931 (16th ill. ed 1989).  This Court finds that, unlike appellant Paul Poupore, Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009), by so arguing here Plaintiff has not waived her IC as a physical impairment.  (But cf. Docket No. 8, Def. Memo. at 12 n.3.)

36.     The ALJ found at Step Two of the sequential analysis that Plaintiff's IC was not severe because the condition improved with treatment and did not significantly limit Plaintiff's ability to work.  (R. at 760.)  The ALJ cites portions of Plaintiff's medical records, starting with her ultrasound from March 15, 2018, that showed normal kidney function and minimal postvoid residual volume.  (Id.; see R. at 575.)  On March of 2020, Plaintiff

had a CT scan for hematuria[5] and abdominal pain which showed hepatomegaly[6] but was otherwise negative or organs with normal appearance.  (R. at 760; see R. at 2700.)  On February 17, 2022, Plaintiff complained during her visit at Rochester Regional Health of urinary frequency and urgency with dysuria and nocturia[7] every 1-2 hours, as well as pelvic pain.  (R. at 760; see R. at 1728.)

37.    On July 18, 2022, during her pregnancy Plaintiff reported suffering increased bladder and abdominal pain.  (R. at 760; see R. at 2934).

38.    On August 23, 2022, Plaintiff was diagnosed with IC and bladder pain syndrome.  (R. at 760; see R. at 2929.)  On September 12, 2022, Alexandria Snow, M.D., of Rochester Regional Health performed three weekly bladder instillation procedures on Plaintiff with some amelioration of her urgency, pain, and pressure.  Dr. Snow noted on September 26, 2022, that Plaintiff was doing well with great improvement following bladder instillation.  (R. at 760; see R. at 2915-16, 2918-19, 2923, 2924.)

39.    The ALJ concluded that Plaintiff's IC improved with treatment and did not significantly limit her ability to perform basic work activities, thus determined that IC was not a severe impairment.  (R. at 760.)

40.    Plaintiff now argues that the ALJ committed harmful error by failing to account for functional limitations from her IC and disregarding her medical record which demonstrated her suffering from dysuria and urinary urgency and frequency.  (Docket No. 6, Pl. Memo. at 28, citing R. at 1235, 1728, 1946, 2916, 2919, 2923, 2926, 2929,

---

[5] Blood in the urine, Taber's Cyclopedic Medical Dictionary, supra, at 800.

[6] Enlargement of the liver, id. at 819.

[7] Dysuria is painful or difficult urination that may be indicative of cystitis, while nocturia is excessive urination especially during the night.  Id. at 549, 1217.

2934.)  She faults the ALJ for not making specific findings for the frequency and length of anticipated bathroom breaks or the percentage of the workday Plaintiff would be off task. See Lowe v. Colvin, No. 6:15-cv-06077(MAT), 2016 WL 624922, at *6 (W.D.N.Y. Feb. 17, 2016).

41.     Plaintiff cites her subjective complaints and treatment from July 2015 before receiving procedures treating her IC.  (Cf. R. at 1235.)  While she continued to suffer IC symptoms during her 2022 pregnancy, her symptoms were treated by weekly bladder instillations.  (R. at 2915-16, 2918-19, 2923-24, 2926, 2929, 2934.)  Later records Plaintiff cites showed these treatments and improvement therefrom, as acknowledged by the ALJ. (R. at 2916, 2923; see R. at 760.)  She sought treatment for IC which worsened during her 2020 pregnancy, but it was addressed by further treatment.

42.     This Court finds that Plaintiff had not produced objective evidence of limitations stemming from IC.  Moreover, this Court finds that the ALJ implicitly factored Plaintiff's IC in the RFC because its restrictions included a schedule of regular breaks every two hours.  (R. at 765.)  Therefore, Plaintiff's Motion for Judgment on the Pleadings on the way the ALJ considered her IC symptoms is denied.

43.     Accordingly, having reviewed the ALJ's decision and considered Plaintiff's argument, this Court finds that the ALJ appropriately considered the opinion of treating source  Dr. Achilles.   Furthermore,  the  ALJ  properly  considered  Plaintiff's  IC  in establishing her residual functional capacity.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:       October 23, 2024
             Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge